Good morning, your honors. I ask the court to reserve three minutes for rebuttal for me. By the way, I should have said this for everyone's benefit. The time on the clock is your total time. So if you want rebuttal, just stop before it's all gone. Thank you, your honor. I'm hoping the court has received my 28-J letter about the effect of Chapman on this case. So you're changing, well, one of your major arguments you're not making at this point, correct? We're withdrawing the argument or conceding the argument that we make at page 8 of our brief that the assault statute could include non-assaultive conduct. Clearly, after Chapman, it is the case that the assault statute 111A requires a simple assault or battery in order for a conviction to be secured under this circuit's analysis of that statute. Nonetheless, there is other case law that doesn't answer the question about whether this assault constitutes a categorical crime of violence or this statute, conviction secured under this statute, would be a categorical crime of violence. Does it make a difference, Mr. Leonard, if the – if Congress has specifically listed aggravated assault as one of the listed offenses for crimes of violence? I think it certainly is instructive, your honor, that in the application notes to 4B1.2, aggravated assault is listed as one of the categorical crimes of violence here. The conviction secured in this case, or the statute pled in this case, I should say, is not an aggravated assault, but simply under 111A for an assault. He was sentenced under 111B, was he not? It appears that the Court did sentence him under 111B. And that's the case. Isn't that a separate crime which adds as the additional element the use of a deadly weapon? I would assert for the purposes of the categorical analysis that is the first step this Court must take, that the Court is limited to the charge that is pled in the indictment in this matter, and the one that was – that he pled guilty to, and that was 111A. Without reference to – If we – if I accept your answer and I skip the categorical approach and go immediately to the modified categorical approach as Judge Burgess did, why doesn't the fact that he was sentenced under 111B end the inquiry so far as this Court is concerned? It's a good question. And I think this case is a close, close case when it comes to the modified categorical approach. My answer is that Shepard requires more, that it's a different analysis than simply looking at the judgment or looking at – in this case, I think the only appearance of aggravated assault, the pleading for 111B, comes in the judgment itself. I need to look back at the record. The crime is listed or is labeled an aggravated assault in the indictment here. But in light of your concession, as I think you must, of our decision in Chapman, that an actual assault is required, and adding to it the B element of deadly weapon, that is a classic assault with a deadly weapon or aggravated assault within the meaning of the guidelines, isn't it? I agree that that is true under the application note. But here – But what more do we need? What I'm really saying is, doesn't that end the inquiry or get done at that point? I don't believe it does, because this is an Alford plea. And an Alford plea does create a different landscape in terms of what a judge can do versus the modified categorical approach. But our case law says that we treat Alford pleas as if they are the equivalent of a finding of guilty. He is, in fact, a judgment of conviction is entered and he is sentenced as if the jury had returned a verdict of guilty. So for purposes of the legal analysis here, what difference does it make that he entered an Alford plea versus being found guilty by the jury? I think the difference is that there isn't a factual record, a set of factual findings that the prosecutor can point to and that the court can rely on that expressly or explicitly finds him guilty of this. But the documents show that it was an assault with a car, right? Certainly that's what the government alleged. Mr. Diamond, in his Alford plea, did not admit any of those facts. I think what Judge Tolman is saying is the case law is contrary to that you get to treat the Alford plea differently in this situation. Otherwise, why wouldn't every criminal, why would anyone ever enter a guilty plea? I mean, we would never, you know, we wouldn't accept Alford pleas if people were, if the posture under the law were that you could treat it as you're asking us to treat it here. I'm certainly not asking the court to do that, to make some finding that all would include a factual finding that would be used under this approach to support enhancing someone's sentence. But what I'm asking the court to do is look at this particular case and the findings that were made pursuant to the plea agreement in, I'm sorry, 1993. Counsel, I'm a little surprised at your answer to Judge Callahan's question. I'm looking at page, I guess it's 14 of 50 in the excerpts of record, which would be the colloquy between Judge Hagerty of the District of Oregon and your client at the time that the Alford plea was taken. And the court says, essentially, on July 14th you were driving a vehicle, which came in close proximity to Officer Strovic at the time when he was trying to stop you. Is that your understanding of why you're entering this plea to aggravated assault? And your client answers yes. Doesn't that establish that the assault was committed with a vehicle as the deadly weapon? I think that that passage can be read in one of two ways, and that is where this analysis falls down. It doesn't expressly say that he's a victim. That's where your argument falls down. I don't understand how we could conclude anything other than the instrumentality of the crime was a vehicle. Well, if he entered a guilty plea and not an Alford plea here, would you be making the same argument? If he admitted to the same thing? If this had been a guilty plea with that colloquy, would that be enough? I think it would, Your Honor. If there were statement of facts that were cited, those facts and that the defendant admitted or admitted. So this is sort of like the Elf fact. If the Alford plea and the guilty plea are the same, and if that had been a guilty plea those facts would be sufficient, then why is it insufficient with an Alford plea? This passage could be read to Mr. Diamond simply affirming that this is the case that he is being, that he's pleading guilty to. But, Mr. Leonard, then I go back to count one of the indictments in which he entered the Alford plea and on which he was sentenced, right? And it says that he intentionally attempted to kill Deputy U.S. Marshal Strovnik while he was engaged in the performance of his official duties by driving an automobile at and ramming Deputy U.S. Marshal Strovnik in violation of 914. With all due respect, Your Honor, Mr. Diamond pled guilty to count two of the superseding indictment, not count one. And I think that that's quite clear from his petition to enter an Alford plea. Okay. But even if you take the language of count two, knowingly and forcibly assault with a dangerous weapon, the Marshal and the only evidence that we have before us is a vehicle. The only place in this plea colloquy where Mr. Diamond assents to anything is the portion that Your Honor has pointed out on what is page 13 of that transcript. But, counsel, if we can take judicial notice of these documents, and I think the case law is clear that we can look at the transcripts of the proceeding as well as the charging documents, what more do we need? That's where I'm having difficulty finding why we should grant you relief. Again, because that passage that the Court pointed out could be read in one of two ways, one, either admitting the facts that I did this, or simply saying, yes, this is the case that we're talking about, and given, I think, the brief nature of the recitation here, that ambiguity is an argument.  Where's the ambiguity? I see an Alfred plea to assault a Federal officer with a deadly weapon, and the only evidence in the record of which I can take judicial notice is a vehicle. What more do I need to conclude that this is a crime of violence? And, again, our position would be that there isn't sufficient factual finding of those facts that under Shepard would allow this to proceed under the modified categorical approach. I'd ask the Court to consider 15 seconds for my rebuttal. Thank you. We'll give you a minute, even though you're out of time. Thank you. I have one question I just want to have answered. Putting aside the colloquy, the statute, he's convicted under 111A1. That's what he pleaded to, right? That is correct, Your Honor. By its terms, it requires a forcible assault, right? Doesn't it have the word forcible in it? It does require a simple assault or battery after Chapman. Doesn't it say forcibly assault? I don't have the statute in front of me, but I'll take your word for it. I do have it here. No, don't take my word for it. You're the advocate. It does say that, Your Honor. Thank you. I confirm it. So my question is, if the statute that he pleads guilty to only convicts someone when they forcibly assault a law enforcement officer, why isn't that enough in itself to be a crime of violence? Because the nature of simple assault or battery, although it does require some force, doesn't require a great deal of force under this Court's case law. Simple assault doesn't require any force. You can just yell at somebody, and that's common law assault. That's correct, Your Honor. And so, given the interpretation of the statute under Chapman, there is no requirement for any more force than the least amount of force. I see. Okay, I got it. Okay, thank you. We're going to give you one minute for your little bit of argument. Thank you, Your Honors. Okay. Now, for the U.S. Attorney's Office, we have Mr. Arvind Swaminathan. Is that right? That's correct, Your Honor. Thank you. You're welcome. And let's hear. Good morning, Your Honors. May it please the Court. Arvind Swaminathan with the United States Government. Good morning. On this appeal, there is a single issue, and I think it's critical to frame the issue properly in order to understand the conclusion. And how defense counsel frames the issue is whether or not assault on a Federal officer, a conviction under 111A of the statute, qualifies as a crime of violence. But respectfully for defense counsel, that's not the question in this case, and that's not what Mr. Diamond pled guilty to. What Mr. Diamond pled guilty to is count two of the indictment, which, as the Court has already pointed out, is a knowingly enforceable assault with a dangerous weapon of a Federal officer. And once we include that element, the element of a deadly weapon into this crime, the conclusion that this is a crime of violence speaks for itself. Well, now, I'm assuming your argument is that under the categorical approach, we can do that. We don't need to get to the modified. Is that correct? That's correct, Your Honor. But does the Chapman decision affect that in any way? I don't believe it does, Your Honor, for a couple reasons. First is the Chapman analysis takes a different statute altogether. What Chapman does illustrate for us is that there is a crime that could be where an individual could be potentially convicted of resisting arrest, for example, without involving any physical force or physical touching. That would rise the level of crime of violence. But this is a different statute. This statute, as the Court has already pointed out, is the forcible assault on an officer. Well, after the statute as amended then had a felony and a misdemeanor in it. Correct, Your Honor. Can we infer anything from the fact that they added the misdemeanor to it? Does that say anything about what the felony was or what? Well, I think what the Chapman court essentially says is that the misdemeanor element requires that whatever conduct is convicted of in terms of resisting arrest also includes an element of assault in order to be convicted under the misdemeanor. That's the way I read Chapman. But, Respectfully, Your Honor, this is a different case than that. The facts of Chapman are far afield of what we have here in terms of what statute or what crime the defendant pled guilty to. In this case, what the defendant pled guilty to was effectively a 111A and a 111B offense. And while the government admits that the indictment is defective and that it doesn't cite the correct statute, it doesn't cite the 111B, under this Court's decisions in Berger, for example, which the Court explained under the Federal rules and what's required by due process is that the defendant get appropriate notice of what he's being charged with. And the statute is not what controls. The statute citations are not what control, but the language of the indictment. This indictment is clear that the absence of 111B is probably some kind of error on the part of the prosecution in putting the indictment together. But ultimately, the language is very clear as to what Mr. Diamond was charged with and ultimately what he pled guilty to, which is knowingly and forcibly assaulting a Federal officer with a deadly weapon. And the definition of deadly weapon and what is required by an assault in this Court's jurisprudence is really what governs. When we look at the elements of the offense and we ask whether or not they are the type that justify characterizing this crime of violence, and we look at the definition of assault under, for example, Chapman, which defines assault as a willful attempt to inflict injury, and we look at the definition of what a deadly weapon is, which is likely to endanger life or inflict great bodily harm, the conclusion that we can draw from that is that any conviction that implicates a deadly weapon under the assault statute, any conviction is a crime of violence because it automatically includes the use or threatened use of physical force. Does post-Chapman, can you only prevail under the categorical approach or can you also prevail under the modified categorical approach? No, Your Honor. If we take a step away from the categorical approach and move to the modified categorical approach, in this case, with respect to Mr. Diamond's conviction, the government still prevails. And it prevails because the plea colloquy is sufficient and because the plea colloquy with the judgment and the indictment and the language of the indictment, which we can then look to as part of the factual basis to which Mr. Diamond pleads. Because when he pleads guilty to the indictment, he's admitting the facts that are alleged in the indictment. And what the indictment says, again, is forcible assault with a dangerous weapon. Well, is he making an admission under an Alford plea, or is he simply acknowledging that if the matter were to proceed to trial, he would be convicted and is assenting to the imposition of a sentence as if he had been convicted? I think that's right, Your Honor. That is what happens under Alford. But I think the – I think I probably misspoke in using the word admitted. I think what I should take a step back and say more accurately is that those facts that are in the indictment are indicative of what the plea colloquy says. So we – but the question that Mr. Leonard and I were wrestling with was whether or not those, quote, unquote, facts are binding on the defendant as an admission against interest. And if an Alford plea is akin to a plea of nolo contendere, which I think it is, historically, a defendant who entered an Alford plea was not found by the fact of conviction, the key illustration of that is in an antitrust case where no admission is made and the defendant is free to then litigate the civil antitrust action as if it had never been convicted of the criminal antitrust violation. So where does that leave us? I mean, as Judge Callahan asked Mr. Leonard, is there a difference between an Alford plea and a plea of guilty for purposes of our sentencing analysis? Well, I don't think there's a difference for the sentencing analysis. And I think the reason is this. Under Alford, what the Court ultimately determined was that a defendant can plead guilty without admitting guilt, but that doesn't absolve the government and the Court to make sure that there is a factual basis to enter that guilty plea. And when we look at the factual basis for entering the guilty plea under Alford, which we – which we can look at in this case, what was the factual basis the Court had before it to enter the guilty plea? We can look at those facts as indicative of what this crime was under the categorical approach, what actually happened. And if we look at it in that vein, we look at the language of the indictment, we look at the plea colloquy, we look at the judgment. When we put those things together, we can understand very clearly what happened, which was that this was assault with a vehicle on a Federal officer, which, because that crime, that conduct, involves the use or more actively threatened use of physical force, that it's a crime of violence. So is your argument that, assume Mr. Diamond was before us not on a challenge to his sentence, but on a challenge to the voluntariness of the plea, that the Court would still have an obligation to look to the underlying facts in order to satisfy    I mean, the Court is saying itself that there was a factual basis to punish him and that he had entered the plea knowingly. That's absolutely correct. The way I read Alford, Your Honor, that's exactly what the Court has to do, is that even though the defendant is not admitting guilt, you're – you're exactly correct in saying the Court still has to make sure there's a factual basis for entering the plea. And – and under Alford, that factual basis, and under – under the modified categorical approach, we can look at that factual basis that was the basis for entering the plea to reach a conclusion on a modified categorical approach. So your argument, then, is that we can do the same for purposes of our sentencing analysis in looking back at the factual record in order to determine whether or not he actually entered an Alford plea to a crime of violence. I believe that's true, Your Honor, and I believe that's why this Court has concluded that we don't treat the Alford plea any differently than we would treat a normal guilty plea, is because it's that factual basis that we're looking at in order to determine whether or not this was a crime of violence. Well, I think the moral I'm taking away from this, if I were a prosecutor, I'd never accept an Alford plea, and if I were a defense attorney, I'd only make Alford pleas. Respectfully, Your Honor, our office in the Western District of Washington doesn't accept very many Alford pleas. This case arose out of Oregon. My understanding of our office's practice is that we don't take Alford pleas for a number of reasons, and this is just one of them. Well, I mean, it appears to me the reason that an Alford plea was entered in this case was because the jury was hung with regard to conviction on this matter. That's correct, Your Honor. Then it made an offer to enter an Alford plea, and the government agreed. That's a very unusual plea. Correct, Your Honor. I mean, Alford pleas are uncommon in general. If the Court has no further questions. Thank you. Hearing none, we appreciate your argument. Mr. Leonard, we're giving you one minute. Thank you, Your Honors. Let me just say that there is a difference in every plea, just in terms of what facts are admitted. And I think that that's the key difference between a straight plea and an Alford plea, is the manner in which the Court satisfies the factual basis for accepting the plea of guilty. But we still have to look at the judicially noticeable documents in order to make that assessment, do we not? That is correct. And different from a straight plea, there is no written statement of facts that is adopted by the defendant and accepted by the Court as a factual basis for a plea. Do you agree with my colloquy with Mr. Swaminathan with regard to if we were looking at the voluntariness, if there had been a challenge to this plea, we would also be looking at the underlying facts in order to satisfy ourselves that there was a basis for punishing him? I haven't researched that particular standard that the Court is referring to. But what I would note is under most Alford pleas, what the Court and the prosecutor often insist upon is either a written statement that the defendant stipulates the Court can use as a basis for determining a factual basis, or perhaps a stipulation that the Court may review police reports that are often attached to the petition or to the Alford plea document that the Court could then use as a basis for satisfying its requirement of a factual basis for the plea. And we have none of that here. I would just ask the Court to look carefully at the final three pages of the sentence of the plea transcript here, and note that the Court is really talking about the basis of Mr. Diamond proceeding to trial. And there isn't an assent by Mr. Diamond of explicit factual findings as required by Chevron. But inherent in a plea of Nolo contendere is an acknowledgment that if the matter were to proceed to trial, the fact-finder could return a verdict of guilty. And that is what permits the Court to sentence the defendant who has entered a Nolo plea as if he had, in fact, been convicted, correct? I think that's correct. With the addition that there would have to be a factual basis obtained in the record in a way that satisfied the Court that there's a basis for guilt. By its very terms, under a Nolo plea, you're never going to get an admission by the defendant that those facts are binding on him because the whole purpose of the plea is not to have to admit to facts. And the way that, in my experience, the Court and the prosecutor have addressed that problem is to exact basically a stipulation from the defendant that the Court can review certain documents or a written statement for determining whether, in fact, there is a factual basis. And I guess we're back to the question I asked you earlier, why can't I look at the transcript and the documents that are judicially noticeable and do just that and conclude under the modified categorical approach that it was a crime of violence? I think the Court can certainly look to those documents. I would disagree with the Court's findings. You would read them differently than I would read them. That is correct, Your Honor. And I think that that shows the ambiguity here and the lack of a uncontroversial  Thank you, Your Honor. I think we're through the time. Thank you. So U.S. v. Diamond shall be submitted. And we appreciate your time. Your Honor, I'm sorry. I missed that. Oh. Well, I was just saying the case would be submitted. Although, Mr. Sorminata, you know, if you wanted to, since we gave an extra several minutes, if you feel you have to say something else, we'd let you. But otherwise, the case is submitted. Briefly, Your Honor, the only thing I would ask the Court to do is take a look at the Guerrero-Velasquez opinion that's cited in her brief that I think answers the distinction between the Alford plea and a guilty plea. I think that case adequately addresses Judge Tallman's concerns. That's it, Your Honor. Thank you. That's very helpful. Okay. We thank both counsel for an excellent argument. Interesting case. The next case being argued is Seahawk Seafoods v. Gutierrez.
judges: Gould, Tallman, Callahan